UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JUSTIN SHROPSHIRE,

      Plaintiff,

v.                                          Case No. 8:20-cv-1931-TPB-CPT

TOWING & AUTO REPAIR
MANAGEMENT CORP, d/b/a
Victory Towing, JOSEPH D. SIMPSON,
and JESSICA K. SIMPSON,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

      Before me is *Plaintiff[ Justin Shropshire's] Supplemental Motion for Entry of Default Final Judgment on Damages Against All Defendants*.  (Doc. 19).   For the reasons discussed below, I respectfully recommend that Shropshire's motion be granted.

I.

      Shropshire initiated this action pursuant to the Fair Labor Standards Act (FLSA or the Act), alleging that his former employer, Defendant Towing & Auto Repair Management Corp, d/b/a Victory Towing (Victory), as well as Victory's owners/operators, Defendants Joseph and Jessica Simpson, willfully violated the FLSA's overtime and minimum wage provisions during Shropshire's tenure at the

company.   (Doc. 1).   In support of these allegations, Shropshire avers that he worked fourteen hours-a-day as a tow-truck driver for the Defendants over a fifteen-day period in August 2019 but received no compensation for his labor.   (Doc. 12 at 2–3).   Based upon these averments, Shropshire seeks $1,908 in unpaid overtime wages and $793.88 in unpaid minimum wages, plus equal amounts in liquidated damages, along with attorney's fees and costs.   (Doc. 19-1 at 1–2).

After filing his complaint, Shropshire effectuated service of process on Victory through its registered agent (Docs. 3, 4) and on the Simpsons through Joseph Simpson, who accepted service on behalf of himself and his wife, Jessica (Docs. 13, 14).   When the Defendants failed to answer or otherwise respond to Shropshire's complaint, Shropshire sought and obtained Clerk's defaults against all three of them.   (Docs. 6, 17, 18).

By way of the instant motion (Doc. 19), Shropshire now requests that the Court enter default judgments against Victory and the Simpsons, arguing that such relief is warranted given, *inter alia*, the uncontested allegations in his complaint and a declaration attached to his motion that addresses the issue of damages (Docs. 1, 19-1). The Defendants have not filed any objections to Shropshire's motion, and the time for doing so has expired.   The matter is therefore ripe for the Court's resolution.

2

II.

Federal Rule of Civil Procedure 55(b) provides that where, as here, a Clerk's default has been entered, a plaintiff may apply to either the Clerk or the Court for the entry of a default judgment.   Fed. R. Civ. P. 55(b).   Before awarding such relief, however, a court must "ensure that it has jurisdiction over the claims and parties." *Wagner v. Giniya Int'l Corp.*, 2020 WL 7774385, at *2 (M.D. Fla. Dec. 3, 2020) (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006)), *report and recommendation adopted*, 2020 WL 7768949 (M.D. Fla. Dec. 30, 2020); *see also Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) ("[W]hen entry of judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.") (quotation omitted).

If jurisdiction is established, the Court must then ascertain whether "there is 'a sufficient basis in the pleadings for the judgment entered.'"   *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (per curiam) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).   The burden on the movant in this context is akin to the one borne by a party seeking to defeat a motion to dismiss for failure to state a claim.   *Graveling v. Castle Mortg. Co.*, 631 F. App'x 690,

3

698 (11th Cir. 2015) (per curiam) (citing *Surtain*, 789 F.3d at 1245);[1] *see also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim.") (citations omitted). Thus, a court looks to see whether the complaint contains adequate factual averments, which—if accepted as true—state "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). In conducting this analysis, the court deems a defaulted defendant to have admitted the plaintiff's "well-pleaded allegations of fact" but not the plaintiff's stated conclusions of law. *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (internal alteration and quotation omitted).

If a claim for liability is properly pleaded, the court must then assess its ability to measure damages. To this end, the "court has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see also Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on a default judgment only if the record adequately reflects the basis for such relief). "Rather than merely *telling* the Court in summary fashion what its damages are, a plaintiff seeking default judgment must *show* the Court what those damages are,

---

[1] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

how they are calculated, and where they come from."   *PNCEF, LLC v. Hendricks Bldg. Supply LLC*, 740 F. Supp. 2d 1287, 1294 (S.D. Ala. 2010) (emphasis in original).

If warranted, the court may conduct an evidentiary hearing on the issue of damages.   Fed. R. Civ. P. 55(b)(2)(B).   Such a hearing is unnecessary, however, where the sought-after damages constitute a liquidated sum or are capable of mathematic calculation, or where "all essential evidence [on the question of damages] is already of record."   *Secs. & Exch. Comm'n v. Smyth*, 420 F.3d 1225, 1232, n.13 (11th Cir. 2005) (citation omitted).   On appeal, a district court's decision to grant a default judgment is reviewed for an abuse of discretion.   *Giovanno v. Fabec*, 804 F.3d 1361, 1365 (11th Cir. 2015) (citation omitted).

Each of the above considerations—jurisdiction, liability, and damages—is addressed in turn below.

## III.

## A.

Under 28 U.S.C. § 1331, federal courts have original jurisdiction over all civil actions "arising under" the laws of the United States.   28 U.S.C. § 1331.   Such laws include the FLSA.   *Nicopior v. Moshi Palm Grove, LLC*, 375 F. Supp. 3d 1278, 1284 (S.D. Fla. 2019) ("There is no dispute that the Court has federal question jurisdiction over Plaintiffs' FLSA claim.") (citing 28 U.S.C. § 1331).   As a result, I find that the Court has subject-matter jurisdiction over Shropshire's FLSA claims.

The Court likewise has personal jurisdiction over the Defendants. "The concept of personal jurisdiction comprises two distinct components: amenability to jurisdiction and service of process." *Prewitt Enters., Inc. v. Org. of Petrol. Exp. Countries*, 353 F.3d 916, 925 n.15 (11th Cir. 2003) (quoting *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1264 (5th Cir. 1983)). "Amenability to jurisdiction" means that a particular defendant is within the substantive reach of the court's jurisdiction under the governing law. *DeMelo*, 711 F.2d at 1264 (citation omitted). Service of process, on the other hand, "is simply the physical means by which that jurisdiction is asserted." *Id.* (citation omitted).

Here, according to the complaint, Victory is a Florida corporation with its principal place of business in Florida. (Doc. 1 at 1); *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 924 (2011) (noting the "paradigm forum" for personal jurisdiction over a corporation is its place of incorporation or its principal place of business); *Subic Bay Marine Expl., Inc. v. JV China, Inc.*, 257 So. 3d 1139, 1141 (Fla. Dist. Ct. App. 2018) ("[C]orporations incorporated under Florida law are Florida residents, subject to the general jurisdiction of Florida courts.") (citation omitted). Furthermore, Shropshire has presented proof that Victory's registered agent received service of the summons and complaint. (Doc. 4); Fed. R. Civ. P. 4(k)(1)(A) (service of process is effective to establish personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court

6

is located"); *see also* Fla. Stat. § 48.081 (authorizing service against a domestic corporation through its corporate officer or its registered agent).

As for the Simpsons, Shropshire represents they reside in Florida, and the returns of service on file indicate that they were properly served through Mr. Simpson at an address in Florida.   (Docs. 1, 13, 14); *see also* Fla. Stat. § 48.031(2)(a) (authorizing substitute service on a spouse).   Given the Simpsons' residence and operation of a business in Florida, as well as the service upon the Simpsons in this state, I find that the requirement of personal jurisdiction is satisfied as to them as well. Fed. R. Civ. P. 4(k)(1)(A); *Patten v. Mokher*, 184 So. 29, 30 (Fla. 1938) (recognizing that Florida courts have general personal jurisdiction over Florida residents, regardless of the county in which they reside); *see also Daniel v. Concord Advice, LLC*, 2020 WL 1677296, at *3 (M.D. Fla. Apr. 6, 2020) ("If the process server's return of service is regular on its face, then Florida law presumes it is valid in the absence of clear and convincing contradictory evidence.") (citations omitted).   Accordingly, I find that the Court has jurisdiction over both the claims and the parties.

### B.

Turning to the issue of liability, Shropshire asserts two counts against the Defendants, one under the FLSA's overtime provision (Count I) and the other under

the FLSA's minimum wage provision (Count II).   (Doc. 1).   Upon review, I find that Shropshire is entitled to relief on both of these claims.

With limited exceptions not applicable here, the FLSA mandates that employers who meet its preconditions pay their employees a minimum wage and also provide overtime pay where the employees work more than forty hours in a week. *Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1220 (11th Cir. 2010) (citing 29 U.S.C. § 206(a) (minimum wage) and § 207(a) (overtime pay)).[2]   The FLSA sets the minimum wage rate for claims brought under the Act at $7.25 per hour, 29 U.S.C. § 206(a), and the overtime rate as at least one and one-half times an employee's "regular rate," 29 U.S.C. § 207(a)(1).   An employee's regular rate has been construed by the courts to be "'the hourly rate actually paid [to] the employee for the normal, non-overtime workweek for which he is employed.'"   *Boyle v. City of Pell City*, 866 F.3d 1280, 1286 (11th Cir. 2017) (quoting *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945)).

To trigger liability under the FLSA's overtime or minimum wage provisions, a plaintiff must make a threshold showing that: (1) an employee-employer relationship existed between the parties during the relevant period; and (2) he was "covered" by

---

[2] Because the Defendants have defaulted in this matter, I do not address the issue of whether Shropshire is subject to the FLSA's so-called "motor carrier exemption."   *See Sparks v. Tate Haulers of S.W. Fla., Inc.*, 2010 WL 11506984, at *2 (M.D. Fla. Feb. 1, 2010) (citing 29 U.S.C. § 207(n) and 49 U.S.C. § 13102).

the FLSA during that time frame.  *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011); *Sec'y of Labor v. Labbe*, 319 F. App'x 761, 763 (11th Cir. 2008) (per curiam) (citing 29 U.S.C. §§ 206, 207, 215).

With respect to the first requirement, the FLSA defines the terms "employee" and "employer" broadly.  *Josendis*, 662 F.3d at 1298 (citation omitted).   An employee is deemed to be "any individual employed by an employer," 29 U.S.C. § 203(e)(1), while an "employer" encompasses "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d).   As so defined, an employer is not only a company for whom the employee directly works but also includes "any person who (1) acts on behalf of that employer and (2) asserts control over conditions of the employee's employment." *Josendis,* 662 F.3d at 1298 (citation omitted).

In this case, Shropshire's allegations sufficiently demonstrate that he and the Defendants had an employee-employer relationship.   He avers, in particular, that he worked for Victory as a tow-truck driver from August 17, 2019, to September 1, 2019. (Doc. 12 at 3).   He also claims that the Simpsons are "owner[s] and/or operator[s] of [Victory]," who control Victory's daily operations by "hir[ing] employees, fir[ing] employees, set[ting] rates of pay and determin[ing] employees' work schedules." *Id.* at 4; *see also Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1309 (11th Cir. 2013) ("[W]e have joined the 'overwhelming weight of authority' and held that 'a

9

corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.'") (citations omitted); *Elwell v. Pierce N Tell, LLC*, 2014 WL 12617813, at *2 (M.D. Fla. Mar. 6, 2014) (finding that allegations about a company's owner and operator with direct supervisory responsibility over the plaintiff were sufficient to state a cause of action under the FLSA against both the owner/operator and the company) (citing *Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986)).

With respect to the second requirement that a plaintiff show he is a "covered" employee, "a plaintiff[-]employee must establish one of two types of coverage under the FLSA: (1) 'enterprise coverage,' which applies to the defendant[-]employer, or (2) 'individual coverage,' which applies to the plaintiff[-]employee." *Gaviria v. Maldonado Bros., Inc.*, 2014 WL 12531281, at *3 (S.D. Fla. Mar. 31, 2014) (citing *Martinez v. Palace*, 414 F. App'x 243, 244–45 (11th Cir. 2011) (per curiam) and *Thorne v. All Restoration Servs.*, 448 F.3d 1264, 1265–66 (11th Cir. 2006)).   Shropshire relies on "enterprise coverage" here.   To succeed on such a theory of liability, Shropshire must demonstrate that, during the pertinent time frame, the Defendants "'ha[d] employees engaged in commerce or in the production of goods for commerce, or . . . ha[d] employees handling, selling, or otherwise working on goods or materials that ha[d] been moved in or produced for commerce by any person' and (2) ha[d] an 'annual gross volume of sales made or business done'" that was in excess of $500,000.

10

*Id.* (quoting 29 U.S.C. § 203(s)(1)(A)); *see also Polycarpe*, 616 F.3d at 1220.   In making this showing, Shropshire "need not do much"—he need only aver the essence of his work, the nature of his employer's business, and a sufficient connection between his work and interstate commerce.   *Ceant v. Aventura Limousine & Transp. Serv., Inc.*, 874 F. Supp. 2d 1373, 1378 (S.D. Fla. 2012) (collecting cases).

Shropshire has met his burden.   In his complaint, he asserts that Victory qualified as an enterprise during the relevant period because it had an annual gross volume of sales exceeding $500,000 and because—as a towing and automobile repair company—it was engaged in interstate commerce.   (Doc. 1 at 2).   These facts—accepted as true given the Defendants' default—cross the threshold necessary to establish enterprise coverage.   *See Polycarpe*, 616 F.3d at 1220–29 (explaining the scope of enterprise coverage); *Nishimatsu*, 515 F.2d at 1206; *Beck v. 4M Towing, LLC*, 2010 WL 11622755, at *1 (M.D. Fla. June 13, 2010) (deeming similar averments involving a tow-truck company and its nexus with interstate commerce to be adequate to show enterprise coverage).

Once a plaintiff has demonstrated that both an employment relationship and coverage existed, the remaining elements of a FLSA violation are "quite straightforward."   *Labbe*, 319 F. App'x at 763.   All that "must be shown [is] simply a failure to pay overtime compensation and/or minimum wages to covered employees."   *Id.*   Although *Labbe* preceded the Supreme Court's decision in *Iqbal*, it is persuasive

11

authority and its teachings on the "straightforward" pleading mandates for FLSA claims are instructive.   In short, an FLSA overtime and minimum wage plaintiff must allege sufficient facts, plausible on their face, to establish that he worked more than forty hours in at least one workweek, that the defendant failed to compensate him using the proper time-and-a-half rate for those overtime hours, and that the defendant also did not pay him the requisite minimum wage. *Moser v. Action Towing Inc. of Tampa*, 2017 WL 10276702, at *1 (M.D. Fla. Feb. 6, 2017) (citation omitted); *Stafflinger v. RTD Constrs., Inc.*, 2015 WL 9598825, at *2 (M.D. Fla. Dec. 14, 2015), *report and recommendation adopted*, 2016 WL 48110 (M.D. Fla. Jan. 5, 2016); *Cooley v. HMR of Ala., Inc.*, 259 F. Supp. 3d 1312, 1319 (N.D. Ala. 2017).

Shropshire has satisfied these pleading requirements.   In particular, he avers that he worked in excess of forty hours for each of the two weeks he was employed by Victory, and that the Defendants not only failed to pay him the minimum wage and overtime amounts to which he was entitled, they did not provide him with any compensation at all.   (Doc. 1 at 2–5).   Thus, I find that the allegations underlying Counts I and II establish the Defendants' liability to Shropshire for violations of the FLSA's wage and hour provisions.

## C.

On the matter of damages, an evidentiary hearing is unnecessary because, as detailed below, the amounts Shropshire seeks are for a sum certain, are subject to easy

12

calculation, and are supported by sufficient evidence in the record.   (Docs. 12, 19-1);
*see also Clough v. McClure Constr. Co., LLC*, 2019 WL 1559661, at *2 (M.D. Fla. Mar.
25, 2019) ("A plaintiff may establish his or her damages by affidavit.") (citing *Adolph
Coors*, 777 F.2d at 1544), *report and recommendation adopted*, 2019 WL 1558667 (M.D.
Fla. Apr. 10, 2019).   Such amounts include liquidated damages, which must be
awarded "absent a showing of good faith." *Joiner v. City of Macon*, 814 F.2d 1537,
1539 (11th Cir. 1987) (citation omitted); *see also Rodriguez v. Farm Stores Grocery, Inc.*,
518 F.3d 1259, 1272 (11th Cir. 2008).

In support of his FLSA overtime and minimum wage claims, Shropshire attests
in his affidavit that he worked 109.5 non-overtime hours and 84.8 overtime hours
while he was employed by the Defendants.   (Doc. 19-1 at 2–3).   Based on his regular
pay rate of $15 per hour and the federal minimum wage pay rate of $7.25 per hour, I
calculate that Shropshire is owed $1,908 in overtime compensation, $793.88 (rounded
to the nearest whole cent) in unpaid minimum wages, and—given his uncontested
allegations that the Defendants willfully violated the FLSA—equal sums in liquidated
damages.   *See Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D.
Fla. 1999) (citations omitted).

13

IV.

In light of all of the above, I recommend that:

1.      Shropshire's *Supplemental Motion for Entry of Default Final Judgment on Damages Against All Defendants* (Doc. 19) be granted;

2.      A default judgment be entered in Shropshire's favor and against the Defendants on Shropshire's FLSA overtime and minimum wage claims (Counts I and II) in the total amount of <u>$5,403.75</u>;[3]

3.      The Court retain jurisdiction over this action to address any request by Shropshire for attorney's fees and costs pursuant to Federal Rule of Civil Procedure 54 and Local Rule 7.01; and

4.      The Court direct the Clerk of Court to close the case following the entry of the default judgment and a determination of Shropshire's entitlement to a sum certain for attorney's fees and costs.

Respectfully submitted this 23rd day of April 2021.


HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

---

[3] This figure is derived from the following: ($1,908.00 x 2) + ($793.875 x 2) = $5,403.75.   The sum differs by one cent from that requested by Shropshire due to the rounding he included in calculating his minimum wage damages, as noted above.

14

## **NOTICE TO PARTIES**

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections, or to move for an extension of time to do so, waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal conclusion(s) the District Judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies to:
Honorable Thomas P. Barber, United States District Judge
Counsel of record

15